BOSTON BLOCK COMPANY *vs.* LEROY S. BUFFINGTON.

November 13, 1888.

**Appeal—Unlawful Detainer.**—An appeal lies to this court from the municipal court of Minneapolis in actions of forcible entries and unlawful detainers.

**Landlord and Tenant—Alteration of Lease.**—Evidence considered, and *held* insufficient to justify a finding that there had been a material alteration of a lease after its execution.

**Same—Premises Untenantable—Tenant's Option.**—If a building becomes untenantable during the term of a lease, under Laws 1883, *c.* 100, the

v.39M—25

lease is, at most, merely terminable at the option of the lessee. He may continue the tenancy if he so elects. This he does by resuming the occupancy and the payment of rent under the lease when the building is repaired.

Appeal by defendant from a judgment of the municipal court of Minneapolis. The clause of the lease on which the question of the erasure of the word "second" arises is as follows: "To have and to hold said premises for the full term of five years from and after the 1st day of August, 1882, with privilege of five years longer, after second five years the rooms every five years to pro rate higher or lower as per rooms on third floor Hennepin avenue front."

*Hart & Brewer,* for appellant.

*E. C. Chatfield* and *D. A. Secombe,* for respondent.

MITCHELL, J. Appeal from a judgment of the municipal court of Minneapolis, in an action of unlawful detainer. The respondent moves to dismiss, on the ground that an appeal will not lie from that court to the supreme court in this class of actions. The contention is that, as the statute (Gen. St. 1878, c. 64, § 121) giving the municipal court jurisdiction of actions of forcible entries and unlawful detainers provides that chapter 84 of the General Statutes shall apply to that court, therefore an appeal will lie only to the district court, as provided in that chapter in case of an appeal from a justice of the peace. We are clearly of opinion, however, that, in making chapter 84 applicable to the municipal court, the legislature intended merely to adopt it, *mutatis mutandis,* as a code of practice to govern the proceedings in that class of actions *in* that court, and that the right of appeal *from* that court is governed by the previous provision of the same section, which gives a right of appeal directly to the supreme court in *all* cases. The motion to dismiss must therefore be denied.

2. The defendant's defence was a right to hold the premises under a written lease from plaintiff's grantors, Whitten & Burdett. The plaintiff's claim was that this lease, which was in evidence, had been avoided by a material alteration made by defendant after its execution, and without the consent of the lessors. This was the principal question litigated, and, in view of the evidence, the court below must

have found in favor of plaintiff's contention. Inasmuch as the lease was executed in duplicate by both parties, one being delivered to each, it may at least admit of doubt whether, admitting that the lessee altered his lease, both being originals, the good lease in the hands of the lessors would not be sufficient to support the estate granted. See *Lewis* v. *Payn*, 8 Cow. 71. But, waiving this question, we are of opinion that the evidence was not sufficient to justify the court in finding that defendant's lease had ever been altered as claimed. The charge made against defendant is virtually forgery. A party who claims that a writing has been thus altered must support his charge by clear and satisfactory evidence. The evidence in behalf of plaintiff on this question was that of Whitten, one of the lessors, and Chatfield, plaintiff's attorney. The testimony of Whitten amounts to really nothing. He merely states that, "to the best of his knowledge and belief," the lease had been altered in certain particulars since it was executed. This statement was made upon examination of a copy of an instrument, which it appears he had not seen, and to which his attention had not been called, for four or five years. From the other evidence in the case it is clear his memory is utterly at fault as to many matters, and therefore is entirely unreliable as to all. The only evidence entitled to any serious consideration is that of Mr. Chatfield. He testifies that in January, 1888, which was after some dispute had arisen between the parties as to defendant's rights under the lease, he went to the office of defendant, who showed him the original lease, also a copy which he had made to send to plaintiff, in Boston; that he read the lease over carefully several times, and the word "second" in the tenth line was not then erased as now. He also states that defendant gave him the copy, and from that he made a copy. Hence the whole case comes down to a question whether this word "second" was erased by defendant subsequently.

The evidence on both sides shows, without conflict, that shortly after the lease was executed, Whitten, one of the lessors, objected to a clause which he said made it virtually perpetual, or at least renewable indefinitely every five years, at the option of the lessee; that he and defendant, after discussing the matter, came to an agreement

that the latter should have the privilege of an additional five years (after the first five) at the same *pro rata* rate of rent as other tenants on the same floor; that the objectionable clause was erased, and this agreement inserted in its place. Now, an inspection of the lease shows that an erasure was made, and an interlineation inserted in its place; that this interlineation, with the word "second" erased, expresses exactly what the parties agreed to insert, but that with that word it would contain, in substance, the very thing to which Whitten objected. The erasure, moreover, bears strong internal evidence of having been made with the same pen and ink, and hence presumably at the same time, as the interlineation itself. It will also be noted that this erasure renders the lease less favorable to the defendant. It is also admitted that defendant did send to plaintiff, in Boston, the copy already referred to, and which was returned attached to their depositions in the case. This copy contains the word "second,' and is otherwise in several respects verbally inaccurate as a copy of the original, as it now appears. It is also somewhat significant that although the great preponderance of the evidence is to the effect that when the lease was executed Whitten took his duplicate out of the lease-book into his own personal possession, yet it is not produced on the trial or accounted for. In the light of these facts, it is utterly incredible that defendant did or would make an alteration of the instrument against his own interest, and especially after he himself had furnished the other party evidence to prove the fraud, by furnishing him a copy of the genuine document. The only reasonable conclusion from the admitted facts is that, in making the interlineation to express the terms of their agreement, the parties first inserted the word "second;" but, seeing that it did not express their meaning, then and there erased it. The testimony of Chatfield was undoubtedly honestly given, but it is easy to see how he may be mistaken. He was examining the lease, so far as appears, not with reference to any alleged alterations, but to ascertain what its terms were. He would naturally assume that the copy made by defendant, and from which he made his copy, was correct; and he might very naturally, after the lapse of time, confound in his mind the copy with the original. As has been said, this copy is verbally inaccurate in several

particulars, and it is not improbable in making it the defendant, for some cause, erroneously inserted the word "second," which had been erased, but was still legible through the erasure.   But, however this may be, the array of admitted or undisputed facts is so overwhelmingly against the probability of any such alteration of the lease as claimed that the finding of the court cannot be sustained, especially against the positive testimony of the defendant, corroborated to a considerable extent by that of one of the subscribing witnesses.

3. In April, 1886, and during the term of the lease, the premises were rendered untenantable by fire, when the defendant moved out, and remained out until the building was repaired, in July, when he moved back, and resumed the payment of rent under the lease, which was accepted by the lessors without objection.   He did not, however, pay rent for the time the premises were untenantable.   Plaintiff claims that on this state of facts, under chapter 100, Laws 1883, the lease was terminated, and is no longer of any effect.   There is nothing in this point.   The statute referred to, at most, only makes the lease terminable, under such circumstances, at the election of the lessee.   In this case the lessee elected to continue the tenancy. Whether by doing so he made himself liable for rent for the time the premises were untenantable does not arise in the present case.   If defendant owes any rent for that time, he owes it to Whitten & Burdett, and not to plaintiff, and no claim has ever been made against him of any default in that respect.

Judgment reversed, and new trial ordered.